## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **NICOLAS TASHMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4-20-cv-00943-HEA** |
| | ) | |
| **ADVANCE AUTO PARTS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary
Judgment, [Doc. No. 29]. Plaintiff opposes the Motion and has filed a
Memorandum in Opposition, to which Defendant has filed a Reply. For the reasons
set forth below, the Motion is granted.

### Facts and Background

Plaintiff filed this action in this Court on July 21, 2020, alleging unlawful
racial discrimination in contracting under the provisions of 42 U.S.C. § 1981 and
common law causes of action for assault, intentional infliction of emotional
distress, negligent hiring and retention, and negligent supervision. Plaintiff's
Complaint alleges the following:

Plaintiff, a United States citizen of Arab/Middle Eastern descent, entered the
Defendant's Advance Auto Parts store on September 19, 2019. Plaintiff claims that

he entered Defendant's store with the "specific intent of purchasing a MAP sensor for his vehicle and to test a car battery to determine if he needed to additionally purchase a new battery." According to Plaintiff, the Defendant's sales representative—Kevin Doe—immediately glared at him upon entry to the store. When Plaintiff requested help, Doe gave Plaintiff two blank pieces of paper, and, upon request for clarification by Plaintiff, he told Plaintiff to put his name on it.

When Plaintiff put his name on only one of the pieces of paper, Doe allegedly told Plaintiff "words to the effect of: '*God damn it, fill out the other paper. Put your damn name on there*.'" When Plaintiff responded with "*Excuse me?*," Doe allegedly shouted at Plaintiff to "take his piece of shit battery and '*go back to your camel country, you motherfucker. You don't belong in this country.*'"

Plaintiff claimed he was confused and thus asked, "*what he was talking about*." Doe allegedly replied by "threatening to physically beat Plaintiff, stating words to the effect of '*I'm going to beat your ass right here, right now*.'" Another employee of the Defendant came out and grabbed Doe to purportedly restrain him.

Because Plaintiff was allegedly "still intending to purchase the MAP sensor and to test his battery to determine if he needed to purchase a new one," he remained standing in the store. Plaintiff then claimed that "the Defendant's sales representative broke free from the other employee and again moved towards Plaintiff in an aggressive, threatening and hostile manner," of which then a second

2

employee became involved. Plaintiff further claimed that Doe continued "to shout derogatory and racist statements at Plaintiff, threatening him and his family with great physical harm."

Count I alleges a 42 U.S.C. § 1981 violation, where Defendant, through its sales representative, interfered with Plaintiff's engagement in a protected activity based on his Arab/Middle Eastern descent. Count II claims Defendant, through its sales representative, assaulted him—in other words, intentionally threatened and attempted to inflict bodily injury on Plaintiff and had the apparent ability to cause Plaintiff harm or create a reasonable apprehension of bodily harm. Count III claims that Defendant acted recklessly and, through its sales representative, intentionally caused Plaintiff emotional distress while a customer at Defendant's store. The conduct of Defendant's sales representative was claimed to be extreme and outrageous beyond all possible bounds of decency. Count IV alleges Defendant knew or should have known of its sales representative's dangerous proclivities and was negligent in hiring and retaining its employee by failing to take further action (e.g., investigation, discipline, counseling, discharge). Similarly, Count V alleges Defendant knew or should have known of its sales representative's dangerous proclivities and was negligent in supervising its employee, even though Defendant knew or should have known that it had the ability and duty to control its sales representative.

Defendant moves for summary judgment. Plaintiff, in response, filed a Memorandum in Opposition and a Statement of Additional Uncontroverted Materials Facts.

The parties' Statements of Uncontroverted Facts are:

Plaintiff is a United States Citizen of Arab/Middle Eastern descent.

On September 19, 2019, Plaintiff entered Defendant's store located in Florissant, Missouri. Defendant provides free testing and charging of batteries as a benefit to all of its customers. Plaintiff entered the store to purchase a MAP sensor for his vehicle and to test a car battery to determine if he needed to purchase a new battery.

Plaintiff informed Advance Auto Parts, Inc. employee and sales representative, Doe, that he wanted to charge and test his battery to determine if he needed to purchase a new one. Without saying anything, Doe gave Plaintiff two blank pieces of paper and Plaintiff asked Doe what he was supposed to do with the paper and was told to put his name on it.

Plaintiff put his name on one of the pieces of paper and handed it back to Doe. Doe then told Plaintiff words to the effect of: "*God damn it, fill out the other paper. Put your damn name on there.*" Doe also stated to Plaintiff words to the effect of: "*I'm going to beat your [or] kick your ass right here, right now.*"

Another Advance Auto Parts, Inc. employee grabbed Doe to restrain him. Plaintiff remained standing near the battery testing area when Doe broke free from that other employee and moved towards Plaintiff. Another employee attempted to drag Doe to the back of the store. But Doe continued to shout derogatory and racist statements at Plaintiff. The General Manager and an employee both asked Plaintiff leave the store and so he did.

Advance Auto Parts, Inc. has a written policy that states discrimination on the basis of any legally protected status is prohibited. This policy against discrimination is part of the Advance Auto Parts, Inc. code of ethics and every employee is required to read and familiarize him or herself with it. Violations of these policies are not tolerated and can be cause for termination.

Advance Auto Parts strictly prohibits discrimination "on the basis of race, color, religion, gender, pregnancy, age, national origin, ancestry, ethnicity, citizenship status, disability, marital status, sexual orientation, gender identity or expression, including transgender status, or any other legally protected status." This policy also applies to customers who enter the store.

During Doe's employment, Louis Hogan served as a senior regional human resources manager for the Midwest region of Advance Auto Parts, Inc. The Midwest region encompassed the Florissant store at issue in this case. Doe became

5

an employee of Advance Auto Part, Inc., as part of its integration with Carquest. Doe has nothing in his employee file showing previous write-ups or misconduct.

When Hogan learned of the misconduct of Doe alleged by Plaintiff, he conducted an investigation, where he determined that Doe violated company policy prohibiting obscenities at a customer. Hogan's investigation found that Doe chose to use language and statements that violated company policy which resulted in his termination. Hogan thus recommended Doe's termination for violating company policy against employees using obscenities at customers. Hogan further recommended Doe's termination because he violated company policy requiring that employees treat all customers with dignity and respect.

The employees Hogan spoke with about Doe described Doe as never having any issues with them. Hogan testified in his deposition that the District Manager, Dante Maranan, made the decision to terminate Doe based on Hogan's recommendation.

Employee Terri Forster testified that she had never heard Doe say that he was going to beat a customer's ass before. Forster, however, did recount an incident wherein she heard and observed Doe threaten to beat someone's ass outside the back of the store after his termination. Forster then testified that she is unaware of any other incidents involving Doe where he either lost his temper or in any way threatened anyone.

6

Employee Doreen Mesick testified in her deposition that Doe was a good employee, and she was not aware of any complaints about him. William Maddox testified in his deposition that "From what little contact I had with him, I thought he was a great employee." Employee Thomas Renfroe testified that Doe was "easygoing." Renfroe also stated that no other coworkers made any complaints to him about Doe. In his deposition, Maranan testified that prior to this incident, he never had any customer complaints towards Doe. But Maranan did testify that Doe admitted that he told Plaintiff he would "*kick his ass*" during the incident.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if the evidence available to the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party meets this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

7

249 (1986); *Celotex,* 477 U.S. at 324. "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008).

Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson*, 477 U.S. at 248. "[A] dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248).

In ruling on a motion for summary judgment, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita*, 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The Court may not weigh the evidence in the summary judgment record, determine credibility, or decide the truth of any factual issue. *Anderson*, 477 U.S. at 242–43.

## Discussion

## Count I: 42 U.S.C. § 1981

Section 1981 states that all persons within the jurisdiction of the United

States shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To establish a prima face case under § 1981, plaintiff must meet these four elements: (1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009).

Plaintiff is of Arab/Middle Eastern descent. There is no dispute that Plaintiff is a member of a protected class under § 1981 [Doc No. 29-1].

To demonstrate interference under § 1981, a plaintiff must show that the retailer "thwarted" the shopper's attempt to make a contract. *Gregory*, 565 F.3d at 471. "By 'thwart,' we mean that interference is established where a merchant 'blocks' the creation of a contractual relationship." *Id.* This element is satisfied, for example, "where a retailer asks a customer to leave a retail establishment in order to prevent the customer from making a purchase." *Id.* Here, Doe told Plaintiff to "*get the fuck out*" of the store during their altercation. This may be interpreted in two ways. First, the purpose of Doe's statement was to prevent Plaintiff from making a purchase. Second, the purpose of Doe's statement was not to prevent Plaintiff from making a purchase, but rather was the incidental result of the heated exchange.

Stemming from the encounter with Doe, Defendant's General Manager and

an employee both asked Plaintiff to leave the shop several times. Such action by Defendant demonstrates a purpose to deescalate the altercation, rather than prevent Plaintiff from making a purchase. As a result, there may be a genuine dispute as to a material fact on whether Defendant asking Plaintiff to leave in this context constitutes interference.

To show protected activity in the retail context, "§ 1981 plaintiffs are required to demonstrate that they actively sought to enter into a contract with the retailer. There must have been some tangible attempt to contract." *Withers v. Dick's Sporting Goods, Inc.*, 636 F.3d 958, 963 (8th Cir. 2011) (quoting *Green*, 483 F.3d at 538 (internal quotation omitted)). In the retail shopping context, a shopper must show an attempt to purchase, involving a specific intent to purchase an item, and a step toward completing that purchase. *Withers*, 636 F.3d at 963. A fact-based determination is by definition "whether a shopper has taken the step toward completing a purchase, or at what point a shopper's interactions with a merchant ripen into a protected tangible attempt to contract." *Id.* (internal quotation omitted). It is the shopping experience that a court focuses on, regardless of the form of payment used by the shopper. *Id.* at 965.

Although Plaintiff states his intent to purchase a MAP sensor, he made no attempt to purchase such an item. He did not communicate this intent to purchase to Defendant's sales representative, Doe, nor did he select the desired sensor to

purchase. Therefore, there was no attempt to contract the MAP sensor. Plaintiff did, however, communicate his intent to test a car battery to determine if he needed to purchase a new battery. Defendant conceded that they advertise free battery testing and charging at its stores as an inducement to getting customers into the store and to generate sales. Plaintiff argues that the first step in completing the purchase of a battery is to determine if one is needed by participating in the free testing service offered by Defendant. It is unclear in binding precedent whether a free service constitutes a step toward completing a purchase. As a result, there may be a genuine dispute as to a material fact on whether a contractual relationship existed.

In order to establish a "discriminatory intent" by an employer related to an employee's misconduct, Plaintiff must show that the employer knew or should have known of the employee's racially hostile propensities. *Green v. Dillard's, Inc.*, 483 F.3d 533, 541 (8th Cir. 2007). Under agency law, an employer is directly liable for harm resulting from his or her own negligent or reckless conduct. *Id.* at 540.

Here, Defendant argued that while Doe admitted he may have cursed the Plaintiff, he explicitly denied referring to Plaintiff's ethnicity or country of origin. But Doe testified: "*I did not say any ethnic. I did not say anything religious.*" This referenced testimony, however, does not state that Doe denied referring to

Plaintiff's country of origin. Countering Doe, Plaintiff testified and provided a

transcript of an audio recording with a third party that Doe did, in fact, make

derogatory statements referring to ethnicity and/or country of origin such as, "*take

your piece of shit battery and go back to your camel country you motherfucker.*"

There may be a genuine dispute as to whether discriminatory language was

used. But more significantly, there is *no* material dispute as to whether the

employer knew or should have known of Doe's racially hostile propensities. Even

though Plaintiff testified that Doe said, "*What are they going to do to me this time,

fire me?*," Doe has nothing in his employee file showing previous write-ups or

misconduct. In fact, several of his co-workers and district manager testified that

they have neither heard complaints against Doe nor saw any misconduct by Doe.

Unlike *Green*, where the Court found the employer could be liable because the

employee had been disciplined for similar past conduct, here, Plaintiff fails to

provide evidence of any *prior* discriminatory conduct by Doe. As a result, Plaintiff

fails to meet his burden on the second prong.

Even though there may be a genuine issue of material fact under some §

1981 elements, Plaintiff fails to meet its burden on *all* the elements. Defendant is

therefore entitled to summary judgment as to Count I.

**Count II: Assault**

Under the doctrine of *respondeat superior*, a principal is liable for its agent's

acts that are within the scope of employment and are done as a means or for the purpose of doing work assigned by principal. *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997).

The case is for the jury when there is any evidence to justify finding that assault by agent of a defendant was incident to an attempt by defendant's employee to do his employer's business. *Simmons v. Kroger Grocery & Baking Co.*, 340 Mo. 1118, 1122, 104 S.W.2d 357, 359 (Mo. 1937). But if the departure from the employer's business is of a "marked and decided character the decision of the question may be within the province of the court." *State ex rel. Gosselin v. Trimble*, 328 Mo. 760, 768, 41 S.W.2d 801, 805 (Mo. 1931).

Whether an act was committed within the scope and course of employment is not measured "by the time or motive of the conduct," but whether it was done "by virtue of the employment and in furtherance of the business or interest of the employer." *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 624 (Mo. Ct. App. 1994). "If the act is fairly and naturally incident to the employer's business, although mistakenly or ill advisedly done, and did not arise wholly from some external, independent or personal motive," it is done while engaged in the employer's business. *Id.*

The question here is whether Doe's alleged threats to beat up Plaintiff and discriminatory statements fall within the scope of employment and done as a

means or for purpose of doing work assigned by Defendant. Defendant's employees are expected to service potential customers, not commit assault. Plaintiff provided no evidence that Doe was following directions by the Defendant. Rather, Doe appeared to have been acting on his own, personal accord. Indeed, this type of activity is prohibited by Defendant's policy.

Additionally, committing assault is not inherent to the employment of a sales representative, as compared to a bouncer or guard. *See Noah v. Ziehl*, 759 S.W.2d 905, 912 (Mo. Ct. App. 1988) (discussing that if specific instructions are given by the employer, a "doorman," "guard," "bouncer," or other such employee may well bind the employer vicariously when, in furtherance of the employer's business he exceeds certain proprieties). Unlike a bouncer, no reasonable juror could find that a sales representative is tasked with violently threatening his or her employer's customers. Such conduct is not in the interest of the employer nor in furtherance of the business.

Assuming *arguendo* that Doe's alleged misconduct fell within the course and scope of his employment with Defendant, Plaintiff still fails to demonstrate that the alleged assault was done as a means for doing work for the Defendant. Plaintiff did not provide evidence that this type of conduct is implicitly permitted (*e.g.*, not disciplining prior abusive or violent conduct) or ratified by the Defendant (*e.g.*, not sanctioning or addressing the conduct). In fact, Defendant conducted an

investigation against Doe and found that he violated company policy, which was the basis for the recommendation to terminate and, ultimately, termination.

The evidence presented by Plaintiff is insufficient to show that Doe was acting in the course and within the scope of his employment and for the purpose of performing his assigned job duties when he allegedly assaulted Plaintiff. Defendant is therefore entitled to summary judgment as to Count II.

**Count III: Intentional Infliction of Emotional Distress**

Under the doctrine of *respondeat superior*, a principal is liable for its agent's acts that are within the scope of employment and are done as a means or for the purpose of doing work assigned by the principal. *Gibson*, 952 S.W.2d at 246.

An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998). In applying scope of employment principles to intentional torts, it is accepted that "it is less likely that a willful tort will properly be held to be in the course of employment and that the liability of the master for such torts will naturally be more limited." *Id.*

The Restatement defines conduct, including an intentional tort, to be within the scope of employment when "actuated, at least in part, by a purpose to serve the [employer]," even when it is forbidden by the employer. *Id.* (citing Restatement §§ 228(1)(c), 230). For example, when a salesperson lies to a customer in order to

make a sale, the tortious conduct is "within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies." *Id.*

The Supreme Court's example in *Burlington* is informative. Here, the evidence presented by Plaintiff is insufficient to show that Doe's alleged conduct benefitted the employer by, for example, increasing sales. While a violation of the employer's policies provides context to the employee's action, it is not determinative of the outcome. Rather, the question is whether the purpose of Doe's tortious conduct was to serve Defendant, his employer. No reasonable juror could find in the affirmative. On the contrary, his alleged conduct negatively impacts Defendant. Poor customer services results in diminished customer relationships and thus diminished profits. A business exists, in part, to generate profits. An employee's tortious action that disrupts this purpose is therefore outside the scope of employment. Defendant is therefore entitled to summary judgment as to Count III.

**Count IV: Negligent Hiring and Retention**

An employer may be liable for negligent hiring "if the employer knew or should have known of the employee's dangerous proclivities and the employer's negligence was the proximate cause of plaintiff's injury." *Reed v. Kelly*, 37 S.W.3d 274, 277 (Mo. App. E.D. 2000). Negligence exists when a "reasonably prudent

16

person would have anticipated danger and provided against it." *Id.* The test for proximate cause is "whether an injury is the natural and probable consequence of the defendant's negligence." *Id.* For a plaintiff to prevail on a negligent hiring action, the employee misconduct must be "consistent with the employee's particular dangerous proclivity exhibited by prior acts of misconduct." *Id.* If the prior acts are not consistent, there is no probable cause. *Id.* The elements of negligent retention are the same as for negligent hiring. *Id.* (citing *Gibson*, 952 S.W.2d at 246).

Unlike *Reed v. Kelly*, where the court assumed the employer knew or should have known of the employee's prior acts of misconduct, this Court cannot make such an assumption given that Plaintiff failed to provide any prior acts of misconduct by Doe. First, Plaintiff did not provide any evidence that Doe has discriminated against a customer before or during his employment with Defendant. Second, Plaintiff did not provide any evidence that Doe had ever assaulted or attempted to assault a customer before or during his employment with Defendant. Third, Plaintiff did not provide any evidence that Doe had intentionally inflicted emotional distress against a customer before or during his employment with Defendant.

On the contrary, Doe's co-workers testified that he was a good employee and that they had not heard any complaints against him during his employment.

Even though Plaintiff alleges that Doe made the following statement: "What are they going to do to me *this time*, fire me?," there is no evidence that previous misconduct occurred prior to this encounter. Moreover, Plaintiff argues that testimony of Doe's "grumpy" demeaner is evidence that he had a propensity for the alleged misconduct. There is no merit for such a conclusion as being "grumpy" is not consistent with discriminatory conduct nor assault and intentional infliction of emotional distress. No testimony or other evidence was provided of any prior acts of misconduct by Doe.

Lastly, Doe was not retained following this incident with Plaintiff. Upon learning of Doe's alleged conduct, Defendant conducted an investigation, which found that Doe chose to behave and use language and statements that violated company policy. Hence, it was recommended that Doe be terminated. And he was indeed terminated from his position as a sales representative with Defendant. Defendant is therefore entitled to summary judgment as to Count IV.

**Count V: Negligent Supervision**

"A master is under the duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them *if* (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as

18

his servant, or (ii) is using a chattel of the master, *and* (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control." *Reed*, 37 S.W.3d at 278 (emphasis added). In short, to prevail on this cause of action, there must be evidence that would "cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." *Id.*

Plaintiff provides no evidence that demonstrates Doe's propensity to be discriminatory, commit assault, and intentional inflict emotional distress toward customers. Plaintiff could not cite to any prior acts of misconduct by Doe that would have alerted Defendant of a potential risk of harm. As a result of such insufficient evidence, Plaintiff fails to show that Defendant, as the employer, was put on notice that Doe, as the employee, would behave in accordance with the alleged propensities during employment. Defendant is therefore entitled to summary judgment as to Count V.

**Conclusion**

Based upon the foregoing analysis, Defendant's Motion for Summary Judgment will be granted on all counts.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 29], is **GRANTED**.

Dated this 8th day of April,  2022.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE